IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 3, 2019 Session

**JILL ST. JOHN-PARKER v. VIRGIL DUANE PARKER**

**Appeal from the Circuit Court for Bradley County**
**No. V-12-473       Lawrence Howard Puckett, Judge**

_____

**No. E2018-01536-COA-R3-CV**
_____

This is an appeal from a trial court's order holding an ex-husband in civil contempt on twelve counts and ordering him to pay $240,507.70 in attorney fees and accounting fees incurred by the ex-wife in this case and a related bankruptcy proceeding. The ex-husband appeals. We affirm the judgment and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and THOMAS R. FRIERSON, II, J., joined.

Donald N. Capparella and Kimberly Macdonald, Nashville, Tennessee, for the appellant, Virgil Duane Parker.

Randall D. Larramore, Chattanooga, Tennessee, for the appellee, Jill St. John-Parker.

**OPINION**

**I.    FACTS & PROCEDURAL HISTORY**

This is the third appeal in which this Court has considered various issues related to the contentious divorce of Virgil Duane Parker ("Husband") and Jill St. John-Parker ("Wife"). The parties were married for over twenty years and had one child. Husband is an attorney, and Wife is a certified public accountant. They accumulated a sizeable estate during the marriage. While the divorce was pending, Husband purchased a 400-acre ranch for approximately $3 million. Wife remained in the marital residence, valued at over $1 million.

As we noted in a previous appeal, the parties' litigation has "a long and complicated history." *St. John-Parker v. Parker*, No. E2014-01338-COA-R3-CV, 2016 WL 2936834, at *1 (Tenn. Ct. App. May 17, 2016). During the divorce proceeding, the trial court's main challenge was to classify and divide corporate debentures, or bonds, worth over two million dollars. The trial court found that Husband lacked credibility, particularly with respect to financial dealings.[1] It took note of his "basic propensity for sharp dealing or dishonest dealing" in regard to various issues. Husband was disbarred in Maryland and disciplined by the Board of Professional Responsibility in Tennessee for "dishonesty, fraud, deceit and misrepresentation."

Both Husband and Wife presented expert testimony from certified public accountants. Ultimately, the trial court classified all of the debentures as marital property and awarded Wife $450,000 out of the debentures. This would have resulted in income to her of $4,500 per month. However, while the first appeal was pending, this Court granted Husband's motion to stay execution on distribution of the assets. As a result, Wife filed a motion seeking temporary alimony until she was able to secure the judgment awarded to her by the trial court. She argued that, because of the stay, she was unable to execute on and secure the funds she needed to provide for her daily living. The trial court granted Wife's request and awarded her temporary alimony in the sum of $3,000 per month, retroactive to the date of the divorce. This created an alimony arrearage of $60,000. The trial court's order noted Husband's "obstructionist behavior in this case," and it provided that "execution may issue" on the $60,000 arrearage judgment.[2]

Husband's temporary alimony payments were to begin on July 22, 2015. Husband paid his monthly alimony payment for two months (July and August) "under protest" but then stopped paying. The record reflects extensive efforts by Wife in the months and years that followed to enforce the alimony obligation, while Husband engaged in equally extensive efforts to avoid paying his obligation.

On October 6, 2015, Wife filed a petition for contempt against Husband, alleging that he had failed to pay temporary alimony as ordered by the court and failed to provide proof of health insurance coverage for the parties' son. She sought compensatory damages and an award of attorney fees. On or about October 12, 2015, Wife caused a garnishment to be served on Regions Bank, where Husband maintained several bank accounts, in an attempt to satisfy the alimony arrearage judgment.

Husband filed an answer to the petition for contempt, claiming that he was unable to make current alimony payments because Wife had garnished his bank accounts,

---

[1] In all fairness, the trial court addressed Wife's credibility as well, but it found that her dishonesty related to adultery, not financial matters.

[2] The award of temporary alimony was eventually affirmed by this Court. *St. John-Parker*, 2016 WL 2936834, at *12.

leaving him unable to tender checks to pay his bills. Husband also filed a motion to quash the garnishment, claiming that the majority of the funds garnished by Wife actually belonged to the parties' son, who had recently attained the age of majority. Wife agreed to release around $28,800 of the garnished funds on the understanding that they belonged to their son. However, she later learned that the garnished account was titled in Husband's name, contrary to his representations about their son's ownership. In the end, the garnishment only successfully captured around $3,000, which was applied toward the retroactive alimony judgment of $60,000.

Unbeknownst to Wife, shortly after the garnishment at Regions Bank, Husband initiated a wire transfer of $260,000 from a TD Ameritrade account he owned to a law firm in Maryland, where his long-time friend and best man from his wedding is employed as a partner. The money was placed in the law firm's escrow account. Husband made other smaller wire transfers during this time as well. Husband left some accounts with no liquid assets as he opened new accounts at other institutions. During this timeframe, Husband failed to pay his $3,000 monthly alimony obligation during the months of September, October, November, and December 2015.

On December 17, 2015, Husband executed a revocable living trust agreement, naming himself and his son as co-trustees. Husband conveyed to the trust "all of [his] right, title, and interest in and to all real and personal property, tangible or intangible, of any nature, in any location, which may be owned by [Husband] or later acquired by [Husband]," including his $3 million ranch. He also executed a quitclaim deed conveying the ranch to himself and his son as co-trustees.

In January 2016, Wife notified Husband that she was serving a subpoena on TD Ameritrade, as she was attempting to locate the $260,000 he wired out of his account weeks before. The very next day, Husband liquidated his stock positions held in an account at TD Ameritrade, and he wired roughly $56,500 out of the account days later. A garnishment was issued against the account that same day, but it came too late because Husband had already withdrawn the funds, leaving a balance of one dollar.

In early February 2016, garnishments were issued against Husband's accounts at a third financial institution, First Tennessee Bank. Husband had just opened an account at the bank in January, and the garnishment captured nearly $60,000. However, days later, on February 10, 2016, Husband filed a petition for Chapter 12 bankruptcy (for family farmers), and the garnishment was released as a result. Husband withdrew $52,500 in cash from the account on February 11.

Although Wife was unaware of this at the time, after a subpoena was issued to yet another financial institution, T. Rowe Price, she discovered that an account was opened for the parties' nineteen-year-old son via online application on February 19, 2016. At that point, the Maryland law firm sent a check to T. Rowe Price for $240,000 for deposit

in the newly created account. From the remaining $20,000 on deposit with the law firm (of the $260,000 initially transferred), $10,000 was sent to Husband, and another $10,000 was sent to the parties' son.

The parties reached an agreement whereby Husband made a few payments of temporary alimony for the months of January, February, March, and April 2016. However, the obligations from September, October, November, and December 2015 remained unmet. Additionally, Husband stopped making payments again in May 2016.

Wife retained an additional attorney, who primarily practices in bankruptcy court, to represent her interests in Husband's bankruptcy case. Wife filed a motion in the bankruptcy court seeking relief from the automatic stay to allow her contempt action pending in state court to proceed. She asserted that her state court contempt action was "the most expeditious process" for pursuing her claims against Husband. It appears that Husband opposed Wife's motion to lift the stay but that the stay was eventually lifted at some point.

Husband stated under oath on two different occasions that he filed for bankruptcy because of Wife's garnishments against his accounts. Because of her alimony claim, Wife was the only priority creditor under the bankruptcy code until the parties' son, who was living with Husband, filed a priority claim for unpaid child support in the sum of one million dollars. Eventually, Husband's bankruptcy proceeding was dismissed, and Husband was barred from refiling for a period of four years due to his bad faith throughout the bankruptcy proceeding.

On April 24, 2017, Wife filed an amended petition for contempt back in the circuit court, which clarified that she was alleging both criminal and civil contempt. She noted that the trial court had ordered Husband to pay temporary alimony and entered the $60,000 judgment for retroactive alimony in June 2015. Wife claimed that she had obtained records indicating that Husband had sufficient assets to pay these alimony obligations at that time and that he simply refused to pay. Wife described the various efforts she had made to enforce the alimony obligation through garnishments and detailed her participation in the bankruptcy proceeding. She described how Husband convinced her to release garnished funds by claiming they belonged to their son, transferred funds to the escrow account in Maryland, and conveyed all of his property to the revocable trust. The trial court had terminated Husband's temporary alimony obligation on December 21, 2016. However, Husband had accumulated an arrearage of $31,964.19 in unpaid monthly alimony obligations and interest, and Wife sought a judgment for the arrearage. In addition, Wife asked the trial court to hold Husband in criminal and civil contempt. She requested that he be fined and incarcerated until he paid the arrearage. She also sought an award of attorney fees and litigation costs as compensatory damages for civil contempt. Finally, Wife asserted a claim for her attorney fees pursuant to Tennessee Code Annotated section 36-5-103(c) "for her efforts to enforce [Husband's] Alimony

obligation."

On May 23, 2017, the trial court held a hearing limited to the issue of criminal contempt. Husband did not testify or even attend the hearing, but he was represented by counsel. The trial court heard testimony from Wife; Daniel Peterson, Wife's accountant and expert witness from the divorce trial; and Kenneth Rannick, Wife's attorney from bankruptcy court. The accountant, Mr. Peterson, testified that he was retained by Wife during the divorce trial in 2013 to trace funds through various accounts primarily with respect to the debentures and marital property. He testified that Wife retained him again in 2015 for the purpose of "chasing alimony." Mr. Peterson provided assistance with gathering and summarizing documents, tracing funds, and "ferreting out" accounts. He reviewed garnishments, bankruptcy filings, bankruptcy court testimony, circuit court filings, and documents produced in response to subpoenas. Husband's counsel had no objection to Mr. Peterson testifying as an expert regarding the flow of funds through Husband's various accounts and Wife's attempts to secure alimony.

Mr. Peterson had compiled a "packet" of materials in binders, containing 52 tabs, to "walk [everyone] through [his] work and observation" with respect to the relevant documents and transactions. He described numerous withdrawals and wire transfers by Husband throughout the time period when Husband was not paying alimony, the largest of which was the $260,000 transfer to the law firm escrow account in Maryland. Mr. Peterson also described how Husband divested himself of any interest in all of his real and personal property through the revocable trust, effectively divesting himself of over two million dollars of equity in his farm. He explained that when Wife was finally successful in garnishing around $60,000 in the accounts at First Tennessee Bank, Husband filed for bankruptcy, causing the funds to be released. Husband then withdrew most of that money in cash.

By Mr. Peterson's calculations, Husband owed a total of $32,100.06 in monthly temporary alimony and interest. In addition, Husband still owed $62,524.86 toward the retroactive alimony judgment (originally $60,000 - $3,377.10 garnished + interest). Mr. Peterson opined that Husband had the ability to pay alimony at all relevant times when the monthly amounts became due and when the retroactive alimony judgment was entered, as he owned over two million dollars in equity in his farm and had sufficient liquid funds, including the $260,000 sum he moved from account to account.

Mr. Peterson's affidavit was submitted as an exhibit, which reflected $27,300 in charges incurred by Wife since 2015. Mr. Peterson testified that his billing record was limited to work done with respect to "alimony and the subsequent movement into the bankruptcy court[.]"

The trial court also heard testimony from Kenneth Rannick, the attorney who represented Wife in Husband's bankruptcy proceeding. Mr. Rannick originally met

Husband and Wife in 2010, prior to their divorce proceeding, at a neighborhood cookout. He encountered Husband at another gathering in 2012, while Husband and Wife were in the midst of the divorce proceeding. Mr. Rannick testified that Husband spoke angrily and emphatically about the divorce and Wife while using vulgar language. According to Mr. Rannick, Husband announced that he was "going to litigate this until every last dime was gone, he wasn't going to pay her a dime, he's going to do everything he could, no matter what, he was not going to give her any money, he was going to spend every last penny he had to tie this up as an ongoing thing."

Mr. Rannick's description of the bankruptcy proceeding reflects that Husband attempted to do just that. Mr. Rannick testified that in his 33 years of practice, with experience in at least 13,000 bankruptcy cases, he had "never seen anything remotely approaching the outrageous conduct in this case." He said "what should have been easy wasn't." Mr. Rannick testified that Husband lied repeatedly, on "document after document after document," which complicated discovery and compounded the matters at issue. He said it was obvious that Husband was not being straightforward, as his filings included many irregularities, even on simple matters such as listing an incorrect social security number, incorrect home address, and incorrect post office box. Husband estimated his assets to be worth between zero and $50,000. He said Husband did not disclose the money he was moving through his friend's escrow account and "didn't know we could find it." Mr. Rannick said that "[i]t took months trying to dig it out," but "[w]e finally located it." Mr. Rannick testified that Husband refused to answer questions, failed to attend meetings, refused to sign orders after reaching agreements, arrived late for his deposition and left before it ended. He would deny his signature on documents provided by his own attorney. Husband moved to disqualify Mr. Rannick twice during the bankruptcy proceeding, which meant that Wife had to retain other attorneys to represent her. Mr. Rannick believed that Husband "engineered" the claim for child support filed by the parties' son, who was living with Husband, all in an attempt to delay the proceeding and defraud Wife. He confirmed that the "genesis" of the bankruptcy case was Wife's pursuit of alimony. Mr. Rannick testified that the bankruptcy court's dismissal with a four-year bar to refiling was "huge" and a very severe punishment.

Mr. Rannick testified that his attorney fee from the bankruptcy proceeding was $100,872.32. He testified that his fee was reasonable in light of the services provided and that this case was "up there" among the most complicated and difficult consumer bankruptcy cases he had seen. Mr. Rannick explained that Wife's attorney fees in bankruptcy court "were three times what they should have been because of just the complexity of what he threw at us, the red herrings he would throw at us." He testified that Mr. Peterson's accounting work was valuable to him "beyond measure."

Finally, the trial court heard testimony from Wife. Briefly, Wife testified regarding the allegation of failure to provide proof of health insurance. Wife explained that the trial court had declined to hold Husband in contempt on a previous occasion, in

2015, for failure to maintain health insurance for their son due to Husband's assurances that he did in fact have coverage. Instead, the trial court ordered Husband to provide proof of such coverage within five days. Wife testified that Husband had never provided the proof of coverage as ordered, which led to her incurring tax penalties under the Affordable Care Act. Wife also testified about her efforts to enforce the alimony obligation since it was awarded in June 2015. She submitted the affidavit of her primary attorney in circuit court and the affidavit of the additional attorneys who assisted with the bankruptcy proceeding. Wife also submitted numerous photographs posted from Husband's social media accounts during the period when he did not pay alimony, depicting him on various trips.

At the conclusion of the hearing on criminal contempt, the trial judge announced his oral ruling. He began by stating that Husband "has zero credibility with this court." The trial judge stated that the evidence presented further demonstrated Husband's "dishonesty and his false dealing in this matter." Fully crediting the testimony of Mr. Rannick, the trial judge found that Husband formulated an intention from the very beginning to prevent Wife from accessing funds and make it as difficult as he could so that it would "cost her." The trial judge added, "he's willing to jump off the cliff as long as he's holding onto her and they both perish[.]" The trial judge fully credited the testimony presented regarding the money that Husband "had access to that he concealed and moved around," including the $260,000 sum. The trial judge concluded that Husband was attempting to create "an appearance of inability to pay." He noted that Husband's conduct was not limited to a mere failure to pay alimony but also included affirmatively engaging in "artifices to defraud," such as the false bankruptcy filing and the conveyance of the farm. The trial judge found that Husband's actions demonstrated "nothing but concealment and intent to defraud" Wife of alimony. He found that Husband "always had the ability to pay," considering that he had $260,000 in the account at the Maryland law firm, $52,500 he withdrew in cash after filing for bankruptcy, and $2 million in equity in his farm.

The trial judge also found Husband in contempt for failing to provide proof of insurance coverage as ordered. Adding the eleven months that Husband failed to pay temporary alimony, the court found that he was in criminal contempt on a total of twelve counts. The trial judge said that he intended to fine Husband $50 and sentence him to ten days in jail for each count due to his intransigence and deliberate misconduct. The trial judge observed,

> None of what he does would I think of doing, because if one is trying to do the right thing, one doesn't do the kind of things that Mr. Parker has done in this case. He just doesn't care to do what the Court orders or do the right thing, is unfortunately the history that's before the Court in this case with Mr. Parker.
> . . . .

. . . I think this is the most aggravated case of just doing whatever he wants to do, in flagrant violation of the Court's order, and dishonesty, just flagrant dishonesty with the Court. Not just this court, but the bankruptcy court, from what I've gathered here from the testimony today. Concealing assets and those things are certainly beyond a reasonable doubt in this case is what he was doing in order to avoid paying his alimony or appearing to be unable to pay his alimony.

He added, "We can't have anybody getting the message that you can do what Mr. Parker has done in this case and not go to jail. Simple as that." However, the trial judge ruled that Husband, who was not present, would be required to appear and show cause why he should not be incarcerated for contempt. Attorney fees and damages would be discussed at the hearing as well. The parties and the trial judge also discussed the fact that the civil contempt allegations would be tried next.

The trial court entered a written order incorporating by reference its oral ruling and finding Husband guilty beyond a reasonable doubt of twelve counts of criminal contempt. It scheduled a hearing for Husband to present any arguments regarding the appropriate length of his sentence or whether it should be suspended. Wife filed a motion for the trial court to take judicial notice of the record from the criminal contempt hearing on the matter of civil contempt based on the same factual allegations.

After a hearing, the trial court entered an "Order on Petition for Civil Contempt," which reflected the terms of an agreement reached by the parties. The order stated that the criminal contempt findings against Husband would be "converted" to findings of civil contempt. At the same time, Husband would dismiss a pending criminal contempt petition against Wife, and Wife would dismiss her criminal contempt allegation against Husband. If Husband paid $32,380.92 within ten days, the counts of civil contempt would thereby be purged. However, this would not impact the court's judgment with respect to any attorney fees that might be awarded. After Wife filed a motion to alter or amend, the trial court entered another order dismissing the claims for criminal contempt but incorporating by reference the testimony and evidence from the criminal contempt hearing for purposes of the civil contempt ruling. The order states that Husband had in fact paid the $32,380.92 sum to Wife and thereby purged himself of civil contempt for failure to pay temporary alimony. However, the order specifically reserved a ruling as to whether Wife should be awarded attorney fees, expert witness fees, or costs arising from her claims for civil contempt and/or pursuant to Tennessee Code Annotated section 36-5-103(c).

Wife filed a memorandum in support of her request for attorney fees and expenses, along with numerous affidavits and supporting documents. She sought an award of her attorney fees incurred by her primary counsel in the contempt proceeding along with the fees incurred by her bankruptcy attorneys in that proceeding. She argued that such an

award was authorized either as compensation due to Husband's civil contempt or pursuant to Tennessee Code Annotated section 36-5-103(c) because she was enforcing her alimony award. Aside from the issue of attorney fees, Wife also sought an award of the fee she owed Mr. Peterson (her accountant and expert witness), either to compensate her for her expenses because of Husband's contempt or as discretionary costs pursuant to Tennessee Rule of Civil Procedure 54.04. In all, she sought an award of $245,136.70 for her attorney fees and Mr. Peterson's fee. She later filed a separate motion for other discretionary costs.

In support of her request for fees incurred in connection with the bankruptcy proceeding, Wife submitted to the trial court a motion to dismiss filed by the United States Trustee in the bankruptcy proceeding, in which the Trustee characterized Husband's bankruptcy case as "the latest chapter in the long-running and heavily contested divorce case of [Husband] and [Wife]." He said "this bankruptcy proceeding was caused by, and has largely been driven by, the divorce proceedings between [Husband] and [Wife]." The Trustee found it apparent that Wife's collection efforts in the divorce case precipitated the filing of the bankruptcy petition, as Husband even admitted that the reason for his filing was Wife's garnishment of his accounts. The Trustee concluded that Husband had been "transferring funds across accounts in an effort to evade garnishments[,]" and his "bankruptcy filing came only when those efforts fell short." (underlining in original) According to the Trustee, Husband's bankruptcy filing was "only the latest step in [Husband's] attempts to evade collection efforts." He said Husband was "abusing the bankruptcy system . . . in connection with an effort to further stymy the litigation and collection efforts of [Wife]." Husband's focus was not on rehabilitating a farming operation but on "continuing the long-running and acrimonious divorce action in a new forum." The Trustee described the bankruptcy case as "an outgrowth" of the divorce case, which "permeate[d] every aspect of this litigious matter." "In short," he added, "this bankruptcy case is nothing more than satellite litigation revolving around the ongoing state court divorce action."

The Trustee also noted the "acrimonious and litigious tenor" of the entire bankruptcy proceeding and the "litany of bad acts" by Husband in that proceeding. He stated that Husband's filings contained "numerous errors, misstatements, and omissions," and "most if not all of these errors and omissions were knowing and . . . intended by [Husband] to protect or hide assets from his ex-spouse and primary creditor, [Wife]."[3] According to the Trustee, Husband "continually worked to evade reasonable inquiries into his financial condition." Considering the "enormity and pervasiveness of [Husband's] false statements and material omissions," he said "the most reasonable inference to draw is that [Husband] has been acting intentionally and in bad faith to hide assets and avoid the payment of his debt obligations." The Trustee suggested that if the

---

[3] The Trustee noted that "virtually all of the unsecured debt in this case is tied to the divorce and nearly all is held by [Wife]."

bankruptcy case was dismissed with a bar to refiling, Wife could "conclude the divorce action and collect any judgments against [Husband] without fear that the automatic stay will again be interposed."

Husband filed a response opposing Wife's request for attorney fees and Mr. Peterson's fee. He conceded that "[Wife] brought a claim in [Husband's] bankruptcy case in an attempt to recover unpaid alimony support from [Husband]." He also acknowledged that "[Wife's] efforts in the bankruptcy court concerned the preservation of [Husband's] funds to be able to pay the alimony ordered by the Bradley County Court." He likened Wife's efforts in bankruptcy court to "a collection action." However, Husband argued that a state court was not authorized to award legal fees for work performed in a federal bankruptcy case. He asked the court to limit any award of attorney fees or expert fees to those incurred in the state court action regarding civil contempt. He also argued that Wife's request to recover discretionary costs was untimely and exceeded the scope of permissible costs under Tennessee Rule of Civil Procedure 54.04.

After a hearing, the trial court entered an order granting Wife all of the attorney fees and the accounting fee she requested, not only as damages for the finding of civil contempt but also as an award pursuant to Tennessee Code Annotated section 36-5-103(c) "because she incurred them in order to enforce the alimony award of the Court." The trial court noted that Husband was found in civil contempt on twelve counts and that he "always had the ability to pay the alimony ordered by the Court." The trial court acknowledged Husband's argument that there was no authority for awarding attorney fees or expert fees incurred in a bankruptcy proceeding. However, the trial court found that Husband's bankruptcy "amounted to a false filing" and that he filed the petition solely to prevent Wife from receiving the temporary alimony awarded to her in this case. The trial court found that the bankruptcy court dismissed Husband's petition "but left it for this Court to assess attorney fees [W]ife incurred in the Bankruptcy."

The trial court found that Wife's motion addressed "the damage caused to her by Husband's steadfast refusal to pay her the alimony ordered by the Court[.]" According to the trial court, the record demonstrated "the extraordinary lengths to which Husband has gone and the high handed tactics he employed in avoidance of the Court's order of spousal support all with his desire (as he stated to Attorney Ken Rannick) to keep Wife under financial duress and defy the Court's order." The court found that Wife "incurred great expense to secure the extraordinary legal efforts required to preserve her judgment from release in Bankruptcy and make Husband pay her Court ordered alimony." It found that time was of the essence in preserving Wife's rights in bankruptcy court. It also found that the novel issues involved in this case required extreme diligence and effort beyond the usual, due to Husband's contemptuous conduct. The trial court found that all of the claimed attorney fees were incurred by Wife to enforce the court's orders, "which Husband resisted to the point that he was found guilty of twelve counts of civil contempt,

- 10 -

made a false Bankruptcy filing and unlawfully concealed assets so as to avoid enforcement" of the alimony decree. Also, the court noted that Wife enforced the court's prior order regarding health insurance for their son.

The court found that Mr. Peterson's accounting work was also necessary due to Husband's failure to pay alimony. According to the court, Husband's misconduct required the tracing of hidden assets that Husband sought to conceal in order to avoid execution and avoid paying Wife. It found that Mr. Peterson's efforts mitigated Wife's injury. The court noted that discretionary costs under Tennessee Rule of Civil Procedure 54.04 are limited to specified costs and therefore clarified that it was awarding Wife "full expenses for expert Daniel E. Peterson . . . not as discretionary costs, but as damages resulting from Husband's civil contempt." It characterized the award of the accounting fee as "proper damages in the nature of compensatory damages allowable to Wife."

In sum, the court found that Wife's attorney fees and accounting fee were appropriately awarded as compensatory damages due to Husband's civil contempt and/or for enforcing the alimony obligation under Tennessee Code Annotated section 36-5-103(c). The order stated that a separate order of judgment would be entered "in the full amounts claimed by [Wife]." The separate judgment recites that Wife was awarded $240,507.70 for attorney fees and expenses (an amount less than the award of $245,136.70 Wife sought in her original motion). Husband timely filed a notice of appeal.[4]

## II. ISSUES PRESENTED

Husband presents the following issues for review on appeal:

1.      Whether the trial court abused its discretion by awarding [Wife] all attorney's fees and costs related to a federal bankruptcy case that is not directly related to the enforcement of alimony under Tenn. Code Ann. § 36-5-103(c)?

2.      Whether the trial court abused its discretion in awarding [Wife] all attorney's fees and costs as "damages" pursuant to Tenn. Code Ann. § 29-9-105 where (1) most of the fees and costs were incurred in the federal bankruptcy proceeding, not the Circuit Court; (2) most of the fees and costs were incurred while the contempt was classified as criminal, not civil; and

---

[4] We recognize that contempt proceedings are *sui generis* and incidental to the underlying divorce action and that here the trial court had before it a contempt petition as well as a request for attorney's fees under Tennessee Code Annotated section 36-5-103(c). To the extent that this procedural posture presents any issues regarding finality of the claim for attorney's fees under said statute, we allow that portion of the appeal to proceed as an interlocutory appeal in the interest of judicial economy. *See Roberts v. Bailey*, 338 S.W.3d 540, 541 n.1 (Tenn. Ct. App. 2010).

(3) the contemptuous conduct involved an omission for failure to pay alimony and provide proof of health insurance, not an affirmative act?

3. Whether the trial court abused its discretion in awarding [Wife] discretionary costs that (1) fell outside of the scope of Tenn. R. Civ. P. 54.04(2); (2) duplicated other awarded costs; or (3) had no support in the record?

4. Whether the trial court abused its discretion by considering the Motion for Discretionary Costs when it was untimely and fell outside the scope of Tenn. R. Civ. P. 54.04(2)?

5. Whether [Husband] should be awarded his attorney's fees and costs on appeal when he had to initiate appellate proceedings to correct the multitude of errors at the trial court level, and [Wife] has received the vast majority of the parties' estate in the divorce?

In her posture as appellee, Wife responds to the issues raised by Husband and raises the following additional issues:

6. Whether the Trial Court erred by failing to align its Judgment Order with its Memorandum Order in which the Trial Court stated, "A separate Order of Judgment on behalf of [Wife] against [Husband] shall be entered today in the full amounts claimed by Petitioner."

7. Whether this Court should rule on all the issues on Appeal rather than remanding to the Trial Court?

8. Whether [Wife] should be awarded her attorney's fees, expenses and costs on appeal which are necessitated to protect her Trial Court award.

For the following reasons, we affirm the decision of the trial court and remand for further proceedings.

## III. DISCUSSION

### A. Attorney Fees

We begin with Husband's contention that the trial court erred by awarding Wife attorney fees related to a federal bankruptcy case pursuant to Tennessee Code Annotated section 36-5-103(c). Again, Husband conceded before the trial court that "[Wife] brought a claim in [Husband's] bankruptcy case in an attempt to recover unpaid alimony support from [Husband]." On appeal, Husband acknowledges that "[i]f [Wife] had

- 12 -

chosen to enforce her alimony award in any other state court forum, Tenn. Code Ann. § 36-5-103(c) would allow her to recover those attorney's fees incurred in that state court." However, Husband insists that section 36-5-103(c) does not extend to fees incurred in federal bankruptcy cases, as such cases are separate proceedings not directly related to alimony cases in state court.

"The *initial* determination of whether a contract or statute 'creates a right to recover attorney's fees' is a question of law that we review de novo." *Khan v. Regions Bank*, 584 S.W.3d 418, 429 n.7 (Tenn. Ct. App. 2019) (quoting *Eberbach v. Eberbach*, 535 S.W.3d 467, 479 n.7 (Tenn. 2017)). If the statute "does create such a right, *then* the trial court has discretion" to determine whether to award such fees and the amount of any such award. *Id.* The issue before us involves the initial determination regarding the trial court's authority to award attorney fees pursuant to Tennessee Code Annotated section 36-5-103(c). *See id.*

At the time of the proceedings below,[5] Tennessee Code Annotated section 36-5-103(c) provided:

> The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

This statute "authorizes courts to award reasonable attorney's fees to the prevailing party in an action to enforce any decree for alimony, child support, or child custody." *Eberbach*, 535 S.W.3d at 475. The discretionary authority to award such fees exists "regardless of whether the fees are incurred at the original divorce hearing or at any subsequent hearing." *Moon v. Moon*, No. E2015-01470-COA-R3-CV, 2016 WL 1605511, at *8 (Tenn. Ct. App. Apr. 21, 2016). Such "awards for legal expenses in custody or support proceedings are 'familiar and almost commonplace.'" *Sherrod v. Wix*, 849 S.W.2d 780, 785 (Tenn. Ct. App. 1992) (quoting *Deas v. Deas*, 774 S.W.2d 167, 170 (Tenn. 1989)).

Tennessee Code Annotated section 36-5-103(c) has been broadly interpreted in many ways. *See, e.g.*, *Toms v. Toms*, 98 S.W.3d 140, 145 (Tenn. 2003) (interpreting the

---

[5] The statute has since been amended, but the amendment only applies to actions commenced on or after July 1, 2018. *See* 2018 Tenn. Laws Pub. Ch. 905.

statute to authorize awards of attorney fees against intervening grandparents who were not a "spouse"); *Dale v. Dale*, No. M2018-01999-COA-R3-CV, 2019 WL 7116204, at *2 (Tenn. Ct. App. Dec. 20, 2019) ("This provision has been construed broadly to permit the award of attorney fees in corollary matters, such as actions to modify visitation rights."); *Muhlstadt v. Muhlstadt*, No. M2012-01267-COA-R3-CV, 2013 WL 3833563, at *6 (Tenn. Ct. App. July 19, 2013) ("This statute has been interpreted by the courts as allowing for the award of attorney's fees to a party defending an action to change a prior order on the theory that the defending party is enforcing the prior order.") (quotation omitted); *Brewster v. Galloway*, No. E2011-01455-COA-R3-CV, 2012 WL 2849428, at *12 (Tenn. Ct. App. July 11, 2012) (recognizing that the statute has been applied to parties who were never "spouses" but had children born out of wedlock); *Pounders v. Pounders*, No. W2010-01510-COA-R3-CV, 2011 WL 3849493, at *5 (Tenn. Ct. App. Aug. 31, 2011) (finding "no support for Father's narrow interpretation of the statute" and awarding attorney fees even though the petition was voluntarily dismissed prior to adjudication); *Evans v. Evans*, No. M2002-02947-COA-R3-CV, 2004 WL 1882586, at *13 (Tenn. Ct. App. Aug. 23, 2004) ("[T]he broad interpretation given the statute, based upon its incorporation of the common law, in the context of child support orders should also apply to spousal support orders.").

For purposes of awards pursuant to Tennessee Code Annotated section 36-5-103(c), appellate courts have recognized that an enforcement proceeding can take place before a different tribunal than the one that entered the original order of custody or support. For instance, in *Shofner v. Shofner*, 232 S.W.3d 36, 36-37 (Tenn. Ct. App. 2007), the parties were divorced and the father had custody pursuant to an order of the circuit court. They were involved in a "labyrinth of legal proceedings" thereafter, and the mother eventually "sought out a new forum to do battle over the children" by filing a petition for dependency and neglect in juvenile court. *Id.* at 38. The juvenile court dismissed the petition and found that the mother was "forum shopping" in a "thinly disguised effort to circumvent the actions of the circuit court." *Id.* However, the juvenile court found no statutory basis to permit an award of attorney fees to the father. *Id.* This Court reversed, finding that such an award was authorized by Tennessee Code Annotated section 36-5-103(c). *Id.* We explained that the dependency and neglect action was just "the latest in a series of bitterly contested domestic actions between [the parties]." *Id.* at 37. The dependency and neglect action was essentially a challenge to the circuit court's custody order, which the father successfully resisted. *Id.* at 40. As such, he was "attempting to enforce" the circuit court's custody decree, and an award of attorney fees was authorized under the statute. *Id.* We said, "The fact Mother chose a different forum in which to challenge a valid custody decree does not impair Father's right pursuant to Tenn. Code Ann. § 36-5-103(c) to recover his attorney's fees." *Id.* at 40-41. Thus, *Shofner* demonstrates that the attorney fees at issue do not necessarily have to be incurred before the same court that entered the custody or support order being enforced.[6]

---

[6] *See also Stack v. Stack*, No. M2014-02439-COA-R3-CV, 2016 WL 4186839, at *4 (Tenn. Ct.

Also, in *In re Conservatorship of Lovlace*, No. M2003-01274-COA-R3-CV, 2004 WL 1459409, at *8 (Tenn. Ct. App. June 28, 2004), this Court affirmed an award of attorney fees and awarded additional fees on appeal pursuant to section 36-5-103(c) where the issue of child support arose in the context of a conservatorship. We rejected the husband's argument that such an award was inappropriate "because the case was a conservatorship action." *Id.* We explained that "the gravamen" of the appeal was about child support, even if the issue was raised "in the context of a conservatorship." *Id.*

The parties have not cited, nor has our research revealed, any cases in which a Tennessee state court has awarded attorney fees incurred in a federal bankruptcy proceeding, as the trial court did here. However, federal bankruptcy courts have considered Tennessee Code Annotated section 36-5-103(c) as it relates to fees incurred in bankruptcy proceedings. In *In re Colbert*, 185 B.R. 247, 248 (Bankr. M.D. Tenn. 1995), a bankruptcy court determined that certain obligations imposed on a husband in his divorce decree were nondischargeable, but the bankruptcy court held that *it* did not have authority to award attorney fees to the wife under Tennessee Code Annotated section 36-5-103(c), even though she prevailed in the bankruptcy proceeding. The bankruptcy court recognized that Wife had "a state statutory right" to attorney fees. *Id.* at 249. However, the court concluded that "a bankruptcy court is simply not the proper court to make an award of attorney fees in this type of case." *Id.* While the bankruptcy court could determine whether an obligation imposed initially by the state court was dischargeable, the bankruptcy court concluded that it was not authorized to award support in the first instance. *Id.* The court reasoned that an award of attorney fees under Tennessee law is "uniquely related to state court support determinations," and therefore, "the decision as to whether such an award is appropriate and, if so, the amount of the award, should be left to the state court." *Id.* In summary, the bankruptcy court explained, "the court concludes that it is not authorized to award attorney fees to the [wife] in this case. Any award of attorney fees must come from the state court." *Id.* at 250. The bankruptcy court noted that the state court may decide to award attorney fees to the wife under Tennessee Code Annotated section 36-5-103(c). *Id.* at 250 n.4.

The same conclusion was reached by another bankruptcy court in *In re Morello*, 185 B.R. 753, 758 (Bankr. E.D. Tenn. 1995) ("Section 36-5-103(c) permits the state court rendering the alimony and child support decree to award attorney fees incurred in enforcing that decree since it is that court 'before whom such action or proceeding is pending.' This court does not construe section 36-5-103(c) as authorizing the bankruptcy court to award attorney fees incurred in a nondischargeability action.").

Again, this Court is not aware of any Tennessee state court decisions actually

App. Aug. 4, 2016) (affirming an award of attorney fees pursuant to Tennessee Code Annotated § 36-5-103(c) incurred in defending a Montana child support order).

- 15 -

awarding attorney fees incurred in a bankruptcy proceeding pursuant to Tennessee Code Annotated section 36-5-103(c). However, our research has revealed one case that suggests that such an award would not be appropriate. In *Carroll v. Corcoran*, No. M2012-01101-COA-R3-CV, 2013 WL 2382292, at \*1 (Tenn. Ct. App. May 29, 2013), an unmarried mother and father filed competing petitions to establish initial custody in their respective counties of residence. The father's petition was dismissed, and the case proceeded on the mother's petition in Sumner County. *Id.* The trial court fashioned a parenting plan and awarded the mother $2,576.50 in attorney fees. *Id.* On appeal, this Court assumed that the mother's request for attorney fees was based on either Tennessee Code Annotated section 36-5-103(c) or Tennessee Code Annotated section 36-2-311, which applies to parentage actions. *Id.* at \*6-7. We noted the trial court's discretion in making such awards but added, "It appears, however, that at least some of the fees were awarded for dealing with Father's petition filed in Robertson County. We are unaware of any authority, and have been provided none, that allows a court to award attorney fees in one case for actions taken in another case." *Id.* at \*7. As such, we remanded for reconsideration of the fee award. *Id.*

This Court followed the holding in *Carroll* in another case that did not involve Tennessee Code Annotated section 36-5-103(c) but instead involved an attorney fee provision in a marital dissolution agreement. *See Foster v. Foster*, No. M2018-00595-COA-R3-CV, 2019 WL 1959603, at \*6–7 (Tenn. Ct. App. May 2, 2019). There, the trial court awarded attorney fees that included representation in an action in another county regarding a garnishment. *Id.* at \*7. We acknowledged that the defense of the action in the other county fell within the scope of the terms of the MDA. *Id.* Still, citing only *Carroll*, we said,

> We do not agree, however, that the court in this case had the authority to award fees for services rendered in the Wilson County action; rather, any award for services rendered in that case would be in the province of the Wilson County Circuit Court to make. *See Carroll v Corcoran*, No. M2012-01101-COA-R3-CV, 2013 WL 2382292 (Tenn. Ct. App. May 29, 2013).[7]

*Id.*

It appears that the *Carroll* court reached its conclusion because it was not provided with any authority to suggest that one court could award attorney fees for actions taken in

---

[7] Before *Carroll*, this Court had affirmed a post-divorce award of attorney fees to a wife that included "$3,489.50 for attorney fees incurred to enforce the final decree" and "$3,442.50 for attorney fees to defend [a] bankruptcy action" filed by the husband. *Post v. Post*, No. M2008-01488-COA-R3-CV, 2009 WL 1850880, at \*2 (Tenn. Ct. App. June 26, 2009). We concluded that such an award was authorized under the parties' MDA and therefore it was not necessary to consider the applicability of section 36-5-103(c). *Id.* at \*8 n.5.

another case. We find it equally noteworthy that the *Carroll* court did not cite any authority in support of its conclusion that such an award was improper. Likewise, *Foster* relied on *Carroll* with no further analysis or citation to authority. In the case before us, we *have* been provided with authority suggesting that a state court may award attorney fees incurred in the specific context of a bankruptcy proceeding pursuant to Tennessee Code Annotated section 36-5-103(c). Considering this authority, we believe that the issue demands a closer examination than that taken in *Carroll* and *Foster*.

We note that in *Morris v. Morris*, No. W2010-00293-COA-R3-CV, 2011 WL 398044, at *11 (Tenn. Ct. App. Feb. 8, 2011), this Court affirmed an award of a portion of a wife's attorney fees pursuant to section 36-5-103(c) when much of the litigation was engendered by the husband filing a "competing" divorce proceeding in Mississippi that forced the wife to incur additional expense and effort unnecessarily. The trial court found that such action "raised attorney's fees for everybody for no rational reason." *Id.* at *11. Although the trial court apparently did not specify whether the partial amount awarded was attributable to the Mississippi litigation, the Tennessee litigation, or both, this Court specifically noted that the award was justified considering that the husband's litigation in Mississippi forced the wife to hire a new lawyer who was licensed in Mississippi as well as Tennessee and "to incur additional expense and effort" in litigating the competing divorce proceedings. *Id.* at *12.

This Court considered an issue comparable to the one currently before us in *Khan v. Regions Bank*, 584 S.W.3d 418 (Tenn. Ct. App. 2019). Specifically, we conducted an in-depth analysis of whether a Tennessee trial court had authority, pursuant to the Tennessee Uniform Arbitration Act, to award attorney fees incurred not only in the trial court but also in a federal bankruptcy proceeding. *Id.* at 425. Notably, we did not cite any blanket prohibition against awarding fees that were incurred in a separate court, such as a bankruptcy court. Instead, we looked to the terms of the applicable statute, Tenn. Code Ann. § 29-5-315, to determine "whether the trial court had *statutory* authority to grant attorney's fees incurred during federal bankruptcy court proceedings[.]" *Id.* at 428. The relevant statute provided that upon the granting of an order confirming, modifying, or correcting an award, "[c]osts of the application, *and of the proceedings subsequent thereto*, and disbursements may be awarded by the court." *Id.* at 429 (quoting Tenn. Code Ann. § 29-5-315) (emphasis added). Under this authority, the trial court awarded fees that included representation in "collateral bankruptcy court proceedings." *Id.* Deeming the issue one of statutory construction, we said the "dispositive issue" was "whether the attorney's fees and costs incurred by the Bank in collateral bankruptcy court proceedings constitute 'disbursements' or '[c]osts of the application, and of the proceedings subsequent thereto[.]'" *Id.* at 430 (quoting Tenn. Code Ann. § 29-5-315). Ultimately, we concluded that they were not. Put in context, the word "proceedings" did not refer to the collateral bankruptcy proceedings. *Id.* at 432.

In *Khan*, we noted the Bank's argument that the purpose of awarding attorney fees

- 17 -

in confirmation proceedings was to discourage frivolous litigation and that Ms. Khan's bankruptcy case was exactly the type of litigation that should be discouraged. *Id.* at 431. Still, we found that the language of the statute, in its current form, did not extend to the bankruptcy case. *Id.* at 432. We added, "If the legislature thinks that this policy would be further served by authorizing the award of attorney's fees incurred in collateral bankruptcy proceedings, it may pass such a statute." *Id.*[8]

We find the *Khan* analysis particularly instructive and likewise approach the issue as one of statutory interpretation. Returning to the language of the statute at issue, it provided, in pertinent part:

> The plaintiff spouse may recover from the defendant spouse . . . reasonable attorney fees incurred in enforcing any decree for alimony . . . both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

Tenn. Code Ann. § 36-5-103(c). Here, Wife returned to the divorce court and filed a petition for contempt due to Husband's failure to pay alimony and to provide proof of health insurance coverage for the parties' son. Days later, she attempted to garnish Husband's accounts in order to satisfy the unpaid alimony judgment. In response to these efforts, Husband filed for bankruptcy. He admitted under oath during the bankruptcy proceeding that "the genesis of the filing" was the garnishment of his accounts by Wife. As the United States Trustee put it, Husband was "transferring funds across accounts in an effort to evade garnishments," and his "bankruptcy filing came only when those efforts fell short." (underlining omitted) Husband's bankruptcy filing was "only the latest step in [Husband's] attempts to evade collection efforts" and "further stymy the litigation and collection efforts of [Wife]." He was simply "continuing the long-running and acrimonious divorce action in a new forum."

Likewise, the trial court found that Husband's bankruptcy "amounted to a false filing," as Wife was Husband's "chief creditor," and he was seeking to avoid payment of his alimony obligation. The trial court found that the fees Wife requested "were incurred by her to enforce provisions of the Court's orders which Husband resisted to the point that he was found guilty of twelve counts of civil contempt, made a false Bankruptcy filing and unlawfully concealed assets so as to avoid enforcement against Husband of the decree of the Court awarding her alimony." The trial court found that Husband's

---

[8] We took a similar approach in *J & B Investments, LLC v. Surti*, 258 S.W.3d 127, 138-39 (Tenn. Ct. App. 2007), when reviewing a trial court's award of attorney fees for not only the civil action before it but also a related separate action. We reversed the award of fees for the separate action because the language of the parties' contract did not extend to the separate action, not because of any blanket prohibition. *Id.* We noted that the parties' entitlement to attorney fees was "limited to the situation agreed to by the parties in the contract." *Id.* at 138.

bankruptcy filing "was prompted solely to prevent Wife [from] receiving the *pendente lite* alimony awarded to her in this case and for no other purpose." It found that Wife "incurred great expense . . . to preserve her judgment from release in Bankruptcy and make Husband pay her Court ordered alimony." According to the trial court, the bankruptcy court dismissed the petition "but left it for this Court to assess attorney fees [W]ife incurred in the Bankruptcy [proceeding]."

In *Shofner*, 232 S.W.3d at 40-41, we held that a parent with custody pursuant to a circuit court decree should not forfeit his right to recover attorney fees pursuant to Tennessee Code Annotated section 36-5-103(c) simply because the mother "chose a different forum in which to challenge [that decree]." Courts have interpreted Tennessee Code Annotated section 36-5-103(c) to support awards of attorney fees in dependency and neglect proceedings and conservatorships. We conclude that the same reasoning should apply here with respect to fees that were incurred to enforce and defend an alimony award in a bankruptcy proceeding. "[T]he public policy considerations and common law roots that support a broad interpretation of Tenn. Code Ann. § 36-5-103(c) in the child support context apply with equal force to spousal support[.]" *Evans*, 2004 WL 1882586, at *13.

For these reasons, we reject Husband's argument that the trial court erred in awarding attorney fees related to the federal bankruptcy proceeding and affirm the trial court's award of Wife's attorney fees in its entirety.[9]

## B. Mr. Peterson's Accounting Fee

Next, we examine the trial court's award to Wife of the fee she owed Mr. Peterson, her accountant and expert witness. Husband argues that accounting or expert fees are not recoverable under Tennessee Code Annotated section 36-5-103(c) because the statute only specifically mentions "attorney fees."[10]

---

[9] Near the end of his brief on appeal, Husband argued that a portion of the attorney fee award for Wife's counsel in the state court proceeding lacked sufficient evidentiary support in the form of an itemization. However, this was not listed as an issue presented for review in the designated section of his brief, so it is waived. *See Hodge v. Craig*, 382 S.W.3d 325, 335 (Tenn. 2012) ("[A]n issue may be deemed waived when it is argued in the brief but is not designated as an issue in accordance with Tenn. R. App. P. 27(a)(4).") To the extent that Husband attempts to raise additional issues in his reply brief, those issues are also waived. *See Hughes v. Tenn. Bd. of Prob. & Parole*, 514 S.W.3d 707, 724 (Tenn. 2017) ("Issues raised for the first time in a reply brief are waived.")

[10] This Court has, on occasion, affirmed similar awards under Tennessee Code Annotated section 36-5-103(c). *See, e.g.*, *Brownyard v. Brownyard*, No. 02A01-9803-CH-00063, 1999 WL 418352, at *16 (Tenn. Ct. App. June 22, 1999) (affirming an award of attorney fees "and $1540 in expert witness fees"); *Beck v. Beck*, No. 01A01-9710-CV-00547, 1998 WL 136130, at *1-2 (Tenn. Ct. App. Mar. 27, 1998) (affirming an award of attorney fees and "accountant fees" for the wife's expert witness who attempted to "penetrate the mysteries of the husband's finances" and rebut his claims of meager income); *D v. K*, 917 S.W.2d 682, 687 (Tenn. Ct. App. 1995) *on reh'g* (Nov. 1, 1995) (awarding the wife fees and expenses

- 19 -

The trial court's order discussed all three possible grounds that Wife argued would support an award of her attorney fees and Mr. Peterson's fee, including section 36-5-103(c), the civil contempt statutes, and Tennessee Rule of Civil Procedure 54.04(2) regarding discretionary costs. Although some aspects of the discussion seem to overlap, the trial court clearly stated, "Wife's full expenses for expert Daniel E. Peterson are awarded not as discretionary costs, but as damages resulting from Husband's civil contempt." As such, we will review the trial court's award of Mr. Peterson's fee as one for compensatory damages for civil contempt. *See Richards v. Richards*, No. M2003-02449-COA-R3-CV, 2005 WL 396373, at *14 (Tenn. Ct. App. Feb. 17, 2005) (finding it unnecessary to decide whether pure "expenses" could be recovered under section 36-5-103(c) when there was more than one basis for the trial court's award).

Husband raises three arguments on appeal as to why he contends it was inappropriate for the trial court to award any fees or costs as damages for civil contempt. We address each in turn.

### 1. Omissions versus Forbidden Acts

Husband argues that the trial court was not authorized to award any damages for his contemptuous conduct because his conduct consisted of "omissions" (failure to pay alimony and to provide proof of insurance) rather than affirmative acts that were forbidden by a court order. Husband argues that Tennessee Code Annotated section 29-9-105 only permits an award of damages if the contempt consisted of "the performance of a forbidden act." He insists that the statute governing contemptuous omissions, section 29-9-104, does not provide for damages. We disagree.

Tennessee Code Annotated section 29-9-104(a) provides that "[i]f the contempt consists in an omission to perform an act which it is yet in the power of the person to perform, the person may be imprisoned until such person performs it." The statute further provides that the person "can be separately fined, as authorized by law, for each day it is in contempt until it performs the act *or pays the damages ordered by the court*." Tenn. Code Ann. § 29-9-104(b) (emphasis added). The language regarding damages was added to the statute by amendment in 2011. *See* 2011 Pub. Acts, c. 119, § 5, eff. April 25, 2011. Since then, "[t]his Court has [] approved of the award of damages in a civil contempt proceeding brought under Tennessee Code Annotated section 29-9-104," as the statutory amendment "expressly contemplated damages." *Brunetz v. Brunetz*, No. E2018-01116-COA-R3-CV, 2019 WL 1092718, at *11 (Tenn. Ct. App. Mar. 8, 2019);

---

including those for a private investigator). However, in *Stancil v. Stancil*, No. M2017-01485-COA-R3-CV, 2018 WL 1733452, at *4 n.3 (Tenn. Ct. App. Apr. 10, 2018), we rejected a mother's suggestion that Tennessee Code Annotated section 36-5-103(c) provided "an independent source of authority" for an award of discretionary costs.

*see, e.g.*, *Smith v. Smith*, No. E2017-01295-COA-R3-CV, 2019 WL 410702, at *9 (Tenn. Ct. App. Jan. 31, 2019) (recognizing that the 2011 amendment "abrogated prior caselaw disallowing damages as a remedy for an omission to perform an act under section 29-9-104"); *Boren v. Hill Boren, P.C.*, No. W2017-02383-COA-R3-CV, 2018 WL 5044669, at *8 (Tenn. Ct. App. Oct. 17, 2018) (rejecting the contemnors' argument based on "a pre-2011 version of the statute and case law construing it"). In *Brunetz*, for example, this Court affirmed an award of attorney's fees as "compensatory damages" when the mother was forced to bring a contempt action in order for the father to comply with his obligations to pay certain expenses. 2019 WL 1092718, at *11.

As our supreme court noted in *Lovlace v. Copley*, 418 S.W.3d 1, 37 n.26 (Tenn. 2013), both sections, 29-9-104 and -105, now describe the availability of "damages" in contempt proceedings. Husband's argument that section 29-9-104 "does not provide for damages" is without merit.

## 2.      Criminal versus Civil Contempt

Next, Husband argues that punishment for criminal contempt is limited to a fine of $50 or imprisonment, and therefore, the trial court had no authority to award compensatory damages for criminal contempt.

"After a finding of contempt, the statutes permit courts to award several different remedies, depending on the facts of the case and whether the contempt is civil or criminal in nature." *Watts v. Watts*, 519 S.W.3d 572, 577 (Tenn. Ct. App. 2016) (citing Tenn. Code Ann. §§ 29-9-103 to -105). Husband argues that under the law applicable at the time of the proceedings below, not all contempt findings allowed a trial court to award compensatory damages such as attorney fees. *See Parimore v. Parimore*, No. W2016-01188-COA-R3-CV, 2017 WL 657771, at *5 (Tenn. Ct. App. Feb. 17, 2017). In *Watts*, 519 S.W.3d at 586, this Court held that "an award of attorney's fees is not permissible in the context of criminal contempt under Tennessee statute." A trial court was authorized to award attorney fees upon a finding of *civil* contempt, but not *criminal* contempt.[11] *Id.*

---

[11] In *Watts*, 519 S.W.3d at 585, the Court acknowledged that "attorney's fees may be a logical and potentially effective part of a sentence for criminal contempt, and the legislature may wish to consider this issue in the future." The 2018 amendment to Tennessee Code Annotated section 36-5-103(c) provided that attorney fees may be awarded in a criminal contempt action. *See* 2018 Pub. Acts, c. 905. Although it does not apply in this proceeding, the amended statute now provides,

> A prevailing party may recover reasonable attorney's fees, which may be fixed and allowed in the court's discretion, from the non-prevailing party in any criminal or civil contempt action or other proceeding to enforce, alter, change, or modify any decree of alimony, child support, or provision of a permanent parenting plan order, or in any suit or action concerning the adjudication of the custody or change of custody of any children, both upon the original divorce hearing and at any subsequent hearing.

- 21 -

A brief review of the timeline in this case is helpful in understanding Husband's argument. In 2015, Wife filed a "petition for contempt" due to Husband's failure to pay alimony. Although she did not specify civil or criminal contempt, she sought an award of compensatory damages and attorney fees. She later amended her petition to allege both criminal and civil contempt based on the same factual allegations. The trial court heard the issue of criminal contempt first and found Husband in criminal contempt on twelve counts. Wife filed a motion to have the issue of civil contempt decided based on the record produced at the criminal contempt hearing because it was based on the same facts. Before Husband served any sentence for criminal contempt, the parties reached an agreement whereby the findings of criminal contempt would be "converted" to findings of civil contempt. We do not have a transcript of the hearing at which this agreement was reached, but according to Husband's brief on appeal, "[Husband] agreed to withdraw his petition for criminal contempt against [Wife] if [Wife] would agree to modify her petition to convert her allegations of criminal contempt into civil contempt." Consequently, after the July 2017 hearing, the trial court entered an order converting the findings of criminal contempt into findings of civil contempt and incorporating the testimony and evidence from the criminal contempt hearing for purposes of the issue of civil contempt. The order reserved a ruling on Wife's request for attorney fees in connection with the claims for civil contempt.

On appeal, Husband argues that no fees or costs can be awarded for the period of time prior to the date of the trial court's order converting the findings of criminal contempt to civil contempt, in July 2017. According to Husband, "All pending litigation and related fees were for criminal contempt until that moment." We find no support for this assertion. Wife's original petition appears to be one for civil contempt, as it did not mention incarceration but sought compensatory damages and attorney fees. She later amended her petition to allege both civil and criminal contempt based on the same factual allegations; however, the allegations and findings of criminal contempt were "converted" to allegations and findings of civil contempt based on the agreement of the parties. In short, Wife's allegation of civil contempt was pending all along. She was simultaneously pursuing criminal contempt for a time, but that aspect of the proceeding was dismissed, and the hearing on criminal contempt was essentially substituted for a hearing on civil contempt. We reject Husband's argument that Wife must be limited to the fees she incurred after the order reflecting the parties' agreement in July 2017.

### 3. The Bankruptcy Proceeding

Finally, Husband argues that the trial court lacked statutory authority to award Wife any fees or costs that related to the bankruptcy proceeding as damages for civil contempt.

---

Tenn. Code Ann. § 36-5-103(c).

"[T]rial courts may award compensatory damages to a party 'for injury arising from the [other party's] illegal disobedience of the court.'" *Keller v. Estate of McRedmond*, No. M2013-02582-COA-R3-CV, 2018 WL 2447041, at *5 (Tenn. Ct. App. May 31, 2018) (quoting *Overnite Transp. Co. v. Teamsters Local Union No. 480*, 172 S.W.3d 507, 511 (Tenn. 2005)). Damages for civil contempt "are compensatory in nature." *Reed v. Hamilton*, 39 S.W.3d 115, 119 (Tenn. Ct. App. 2000). They serve to compensate the petitioner for the loss sustained as a result of the wrongful and contemptuous conduct. *See id.* at 120. The measure of damages for civil contempt is "the actual injury sustained as a result of the contempt." *Lovlace*, 418 S.W.3d at 37 n.26 (quoting *Overnite Transp.*, 172 S.W.3d at 510-11).

"Actual damages, or compensatory damages, consist of '[a]n amount awarded to a complainant to compensate for a proven injury or loss; damages that repay actual losses.'" *Keller*, 2018 WL 2447041, at *5 (quoting *Black's Law Dictionary* (10th ed. 2014)).

> A compensatory civil contempt order reimburses the injured party for the losses and expenses incurred because of an adversary's non-compliance. This includes losses flowing from noncompliance and expenses reasonably and necessarily incurred in the attempt to enforce compliance.

*XL Sports, Ltd v. Lawler*, No. M2006-00637-COA-R3-CV, 2007 WL 2827398, at *6 (Tenn. Ct. App. Sept. 28, 2007) (internal quotations omitted).

"[A]ttorney's fees are among the types of compensatory damages that may be awarded in a civil contempt proceeding." *Brunetz*, 2019 WL 1092718, at *11. An award of damages, such as attorney fees, compensates the prevailing party "for the expenses incurred to obtain compliance with a court order." *St. John-Parker*, 2016 WL 2936834, at *13 (quoting *Cremeens v. Cremeens*, No. M2014-01186-COA-R3-CV, 2015 WL 4511921, at *7 (Tenn. Ct. App. July 24, 2015)). However, attorney fees are not the only type of compensatory damages that may be awarded. *See, e.g.*, *Keller v. Estate of McRedmond*, 495 S.W.3d 852, 882 (Tenn. 2016) (explaining that the petitioners could "assert claims of civil contempt against [the respondent] for any actual damages that arose out of his violation of the trial court's orders"); *Boren*, 2018 WL 5044669, at *3, *8 (affirming the trial court's award of damages for civil contempt due to failure to produce a computer server, which damaged the plaintiffs in the sum of $4,616); *Wagoner-Angelin v. Angelin*, No. E2016-01850-COA-R3-CV, 2017 WL 3769373, at *10 (Tenn. Ct. App. Aug. 29, 2017) (affirming an award of $12,710 to remedy a flooding problem); *Rentz v. Rentz*, No. E2013-02414-COA-R3-CV, 2014 WL 3748562, at *4 (Tenn. Ct. App. July 30, 2014) (affirming an award of $4,000 in economic damages for civil contempt although the trial court declined to award attorney fees); *B.M.M. v. P.R.M.*, No. M2002-02242-COA-R3-CV, 2004 WL 1853418, at *16 (Tenn. Ct. App. Aug. 18, 2004)

- 23 -

(affirming an award of private investigator fees under section 29-9-105); *Ledford v. Ledford*, No. 01A01-9701-CH-00029, 1998 WL 736664, at *1 (Tenn. Ct. App. Oct. 23, 1998) (affirming monetary damages for the destruction of property); *Brummett v. McCoury*, No. 03A01-9512-CH-00425, 1996 WL 285405, at *2 (Tenn. Ct. App. May 24, 1996) (affirming award of $54,623.91 for damage to property); *Kuydendall v. Latham*, Chester Eq. No. 1, 1991 WL 10178, at *1-2 (Tenn. Ct. App. Feb. 4, 1991) (affirming an award of damages from operating a store in violation of the court's order). In fact, the Court of Appeals for the Sixth Circuit affirmed a finding of civil contempt and an award of damages including $193,892 in "accounting fees" in *Williamson v. Recovery Ltd. P'ship*, 467 F. App'x 382, 387 (6th Cir. 2012) *cert. denied*, 568 U.S. 963 (2012). The Court noted that in a civil contempt proceeding, such sanctions can be used "to compensate the complainant." *Id.* at 396.

Husband's argument on appeal with respect to this issue is a bit difficult to follow. Husband does not deny that his conduct was contemptuous, nor does he argue that his conduct did not give rise to the need for Wife to utilize the expert services of an accountant in order to trace his funds.[12] Husband does not argue that any particular action of Mr. Peterson was unnecessary or, for that matter, unrelated to tracing his funds or "chasing alimony." In fact, before the trial court, Husband acknowledged that "[t]hese fees were assessed for work [Mr. Peterson] alleges he performed related to the issue of alimony both in the Circuit Court case and in the Bankruptcy Court case." On appeal, Husband simply argues that Wife cannot be compensated for any "discretionary costs" that "relate to the bankruptcy proceeding." His brief states: "[N]o Tennessee cases have discussed the award of discretionary costs as falling within 'damages' for civil contempt under the statute." He claims that "[t]here is no statutory or other authority for [Wife] to recover Mr. Peterson's expert fees incurred solely in the federal bankruptcy court."

As previously noted, however, the trial court awarded Mr. Peterson's fee not as an award of discretionary costs but as damages for civil contempt. The trial court found that Wife could not be placed "in the status quo" for the period she suffered without alimony, and therefore, an award of "compensatory damages" for Husband's civil contempt was appropriate. It found that Husband's misconduct "necessitated the tracing of assets

---

[12] In support of her request for an award of damages for Mr. Peterson's accounting fee, Wife alleged:

> As a direct result of [Husband's] pervasive chicanery, [Wife] was required to retain the services of, Daniel Peterson, to trace funds by applying specific techniques and methodology to [Husband's] subterfuge so that clear and understandable reports could be prepared and presented for attorneys, U.S. Trustees, and the Courts. Extensive amounts of time and effort were required to gather, organize, compile and analyze the magnitude of data at issue.
>
> [Husband's] false statements about his cash, assets, income, ability to pay alimony and his refusal to properly participate in discovery, created the necessity for [Wife] to provide evidence of the truth.

which Husband sought to conceal[.]" Additionally, the order states:

> The Court finds that Exhibit 4, the invoice of Daniel E. Peterson, Wife's accountant was for work necessitated by Husband's failure to pay Wife's alimony and in order to trace assets hidden by husband and as such his charges are proper damages in the nature of compensatory damages allowable to Wife. The cost of Peterson was in furtherance of the Court's ruling of Husband's civil contempt.

It found that Mr. Peterson's fees "were necessitated wholly by the misconduct of Husband for which the Court found Husband in civil contempt due to his willful refusal to pay Wife alimony[.]"

We discern no error in the full award of Mr. Peterson's accounting fee solely because a portion of his work, which included tracing assets, ferreting out accounts, and chasing alimony, "related to" the bankruptcy proceeding. "Civil contempt proceedings . . . provide compensation as 'relief to a party who has suffered unnecessarily as a result of contemptuous conduct.'" *Dukes v. Dukes*, No. M2014-00847-COA-R3-CV, 2015 WL 9946275, at *2 (Tenn. Ct. App. Aug. 13, 2015) (quoting *XL Sports*, 2007 WL 2827398, at *6). "[T]he disobedience of the court's order is not rectified until the offending party pays damages to make the other party whole." *Cremeens*, 2015 WL 4511921, at *7 (quoting *Overnite Transp.*, 172 S.W.3d at 511).

As we said in *Beck*, 1998 WL 136130, at *2, when awarding a wife her accounting fee, "it does not seem just to penalize the wife who found it necessary to seek assistance in extracting the true facts from appellant" in an attempt to "penetrate the mysteries of the husband's finances." We affirm the award of Mr. Peterson's accounting fee as damages for civil contempt.

### C. Discretionary Costs and Additional Attorney Fees

Both parties raise issues on appeal regarding discretionary costs. Wife argues that the trial court "intended" to award her discretionary costs but "inadvertently omitted" them from its final judgment. She also argues that the trial court "inadvertently omitted" a portion of the attorney fee of one of her bankruptcy attorneys in its final award. As such, she asks this Court to modify the judgment to include those sums.

Curiously, Husband's brief proceeds as if the trial court awarded Wife discretionary costs. It states, "[Wife] requested, and the trial court awarded, discretionary costs that well exceeded the permissible scope of Tenn. R. Civ. P. 54.04." He argues that her motion for discretionary costs was untimely and that some of the costs she requested were impermissible.

From our review of the record, we simply cannot discern whether the trial court intended to award Wife discretionary costs or the additional fees incurred by her other bankruptcy attorney.  We begin with the attorney fees.

In the trial court, Wife filed a "Memorandum in Support of Award of Fees" in which she sought to recover the fees she had incurred from the following individuals, totaling $245,136.70:

| | | |
|---|---|---|
| Randall D. Larramore | $ 74,605.75 | (Ex. 6) |
| Ken Rannick | $100,872.00 | (Ex. 7) |
| John Konvalinka | $ 25,469.00 | (Ex. 8) |
| John Konvalinka | $ 4,629.00 | (Ex. 9) |
| Daniel Peterson | $ 37,849.70 | (Ex. 10) |
| Allison Ulin | $ 1,711.25 | (Ex. 11) |

(footnotes omitted).  The trial court's order of judgment awarded the following sums:

| | |
|---|---|
| $74,605.75 | Attorney Fee of Randall D. Larramore |
| $100,872.00 | Attorney Fee of Kenneth C. Rannick and Rannick, P.C. |
| $25,469.00 | Attorney Fee of John P. Konvalinka |
| $1,711.25 | Attorney Fee of Allison Ulin Lynch |
| $37,849.70 | Fees of Accountant Daniel E. Peterson |
| $240,507.70 | |

It is evident from the judgment that the trial court's award did not include the smaller sum billed by Attorney Konvalinka.  In the trial court's discussion of its award of attorney fees in its more detailed memorandum, the court initially stated that it credited "the affidavits filed with the current motion ie Exhibits 1,2,3,4,5 and 6," but it later stated that the "fees requested in Exhibits 1,2,3,5 and 6 were incurred as a result of the novel issues present in this case," omitting any reference to Exhibit 4.  Later, it referenced the fees of "Konvalinka in Exhibit 3" and "the affidavit of Attorney John P. Konvalinka . . . (Filed as Exhibit 3 to the motion.)"  The trial court's order stated that certain exhibits were attached, but the order in the record before us does not contain the exhibits referenced above.

We recognize, as Wife notes, that the trial court concluded its memorandum by stating that it would enter an order of judgment "in the full amounts claimed by [Wife]."  However, it is not clear from the memorandum that the trial court had the second affidavit of Konvalinka before it when making its decision and also intended to include it in the award.  Unfortunately, neither party filed a post-trial motion seeking clarification as to the amount Wife now claims was "inadvertently omitted."  Thus, we will remand this issue to the trial court for it to consider Wife's request of an additional award of $4,629 reflected in the second affidavit of Konvalinka.

We now turn to discretionary costs. After Wife filed the aforementioned "Memorandum in Support of Award of Fees," seeking the amounts quoted above, she filed a "Motion for Discretionary Costs and Costs Pursuant to the Courts Finding of Contempt," seeking to recover the following:

$10,256.87    Rule 54.04 Cost incurred by [Wife]
$9,395.42     Out of Pocket Costs incurred by [Wife][13]

She also argued that Mr. Peterson's fee should be awarded either as discretionary costs or as compensatory damages for the finding of civil contempt. As the previous quote from the order of judgment demonstrates, it included the sums Wife initially requested for attorney fees and Mr. Peterson's fee, but it did not mention any amount designated as discretionary costs. The title of the trial court's detailed memorandum stated that it was an award of damages for civil contempt, attorney fees under Tennessee Code Annotated section 36-5-103(c), "and as discretionary costs to the prevailing party." However, the memorandum contains the following analysis regarding discretionary costs:

AWARD OF DISCRETIONARY COSTS FOR REASONABLE AND
NECESSARY EXPENSES FOR EXPERTS UNDER TENNESSEE RULE
OF CIVIL PROCEDURE 54.04(2)

Tennessee Rule of Civil Procedure 54.04 (2) provides for the award of discretionary costs to a prevailing party.

. . . Discretionary costs allowable are: reasonable and necessary court reporter expenses of trials, reasonable and necessary expert witness fees for depositions, (or stipulated reports) and for trials . . . travel expenses are not allowable discretionary costs.

Tenn. R. Civ. P. 54.04 (2) (in pertinent part.)
However, allowable discretionary costs include only those costs attributable to the trial or deposition testimony itself. In *Stancil v. Stancil*, 2018 WL 1733452 (Tenn. App.), the appellate court disallowed any costs

---

[13] It is not entirely clear whether Wife was seeking to recover both of these sums or one as an alternative to the other. It appears that Wife sought $10,256.87 as "classic" discretionary costs and/or the sum of $9,395.42 as additional "out of pocket" damages for contempt. The attached affidavit stated that the costs on one exhibit for "classic" discretionary costs reflected "a subset of those costs" on another exhibit for out-of-pocket costs. Husband's brief on appeal states that the trial court awarded both of these sums to Wife as "discretionary costs," but the only record cite he provides is "(TR 347-62)" generally referencing the trial court's sixteen-page memorandum. Wife only asks this Court to increase the trial court's judgment to include $12,275.42 in "inadvertently omitted" discretionary costs.

not "specifically identified in Tenn. R. Civ. P. 54.04 citing *Mass. Mut. Life Ins. Co. v. Jefferson*, 104 S.W.3d 13, 35-36 (Tenn. Ct. App. 2002). The trial court could not simply award the entire invoice of the expert but had to exclude expenses/charges of the expert for travel, file review, deposition (or trial) prep., and meeting with the attorney. The Rule limits the award of discretionary costs to the cost of actually testifying. Id See *Chaffin v. Ellis*, 211 S.W.3d 264, 293 (Tenn. Ct. App. 2006). *Shardan v. Global Hous., Inc.*, 983 S.W.2d 230, 239 (Tenn. Ct. App. 1998).

> Wife's full expenses for expert Daniel E. Peterson are awarded not as discretionary costs, but as damages resulting from Husband's civil contempt.

Thus, it is not clear from the order whether the trial court actually considered Wife's request for discretionary costs aside from those related to Mr. Peterson's fee. We recognize that the trial court credited certain itemizations and stated that those were attached as exhibits, but those exhibits are not in the record.

Unfortunately, we must remand this issue to the trial court as well. We acknowledge Wife's request for this Court to decide the issue in order to bring an end to this litigation and its expenses. However, as its name implies, "the award of discretionary costs under Rule 54.04(2) is discretionary with the trial court and reviewed for an abuse of discretion." *Fichtel v. Fichtel*, No. M2018-01634-COA-R3-CV, 2019 WL 3027010, at *27 (Tenn. Ct. App. July 10, 2019). Husband raised numerous arguments in the trial court and on appeal against an award of discretionary costs. Given the trial court's discretion, these arguments should be considered by the trial court in the first instance.

### D. Attorney Fees on Appeal

Finally, we address the parties' requests for an award of attorney fees on appeal. Husband argues that an award of such fees is appropriate "when a party is disadvantaged and paying the attorney's fees would be hardship for that spouse." He asks this Court to consider his recent bankruptcy filing. Given Husband's lack of success on appeal, we respectfully deny his request for attorney fees for appellate work.

Wife also requests appellate attorney fees on the basis that she is disadvantaged and has been required to deplete her resources continually pursuing the alimony and attorney fees awarded by the court. She asks this Court to consider Husband's "misconduct and vexatious behavior" throughout these proceedings. She also cites the trial court's observations regarding Husband's "intransigence and his just deliberate misconduct," as the trial judge stated that this was "the most aggravated case of [Husband] just doing whatever he wants to do, in flagrant violation of the Court's order, and . . . flagrant dishonesty with the Court[.]"

Tennessee Code Annotated section 36-5-103(c) provides statutory authority for this Court to award appellate attorney fees to a prevailing party. *Eberbach*, 535 S.W.3d at 475. Considering Wife's success on appeal in defending her awards of attorney fees and damages for civil contempt, in addition to Husband's bad faith and steadfast refusal to pay Wife alimony, we grant Wife's request for attorney fees on appeal. The trial court will determine a reasonable fee for appellate work on remand.

## IV. CONCLUSION

For the aforementioned reasons, the decision of the circuit court is affirmed and remanded for further proceedings. Costs of this appeal are taxed to the appellant, Virgil Duane Parker, for which execution may issue if necessary.

_____
CARMA DENNIS MCGEE, JUDGE